## Albert A. Fisk, Plff. in Err., *v.* Equitable Aid Union.

Where, by the terms of a certificate of life insurance issued by a mutual benefit association, the whole amount being payable to a single beneficiary, the member is empowered to change the designation of the beneficiary upon the presentation of the certificate, together with a new application, to an officer of the association, and the member surrenders such certificate and obtains a new one, containing the names of new beneficiaries in addition to the original beneficiary, and giving the latter a share, instead of the whole, of the amount insured, such new certificate becomes a substitute for the first and the rights of the original beneficiary are controlled thereby; and this is so although the original certificate was delivered to such beneficiary, and the change was made without his knowledge or consent, and he paid the dues up to the member's death.

(Argued October 10, 1887. Decided October 24, 1887.)

October Term, 1887, No. 15, W. D. Error to the Court of

Cited in Hamilton v. Royal Arcanum, 189 Pa. 273, 275, 42 Atl. 186.

Note.—The beneficiary named in the certificate may be changed upon compliance with the requirements of the by-laws. Jinks v. Banner Lodge, No. 484, 139 Pa. 414, 21 Atl. 4; Beatty's Appeal, 122 Pa. 428, 15 Atl. 861; Hamilton v. Royal Arcanum, 189 Pa. 273, 42 Atl. 186. And the existing

Common Pleas of Mercer County to review a judgment in favor of defendant in an action of debt on an insurance certificate, issued by a mutual benefit association.   Affirmed.

The original certificate on which this suit is brought was for $1,175, payable to Albert A. Fisk, the plaintiff, husband of the member to whom the certificate was issued.   The second certificate, referred to hereafter, was for $1,175, payable as follows: To Albert A. Fisk, the husband, $375; to Mary Fisk, the member's mother, $300; to three sons of the member, $300, $100, and $100, respectively.

Said Mary Fisk, and A. H. McElrath, the guardian of the infant children of the member, mentioned in the second certificate, were brought into the suit as interpleaders.

The facts of the case are sufficiently set forth in the charge of the court below, MEHARD, P. J., which was as follows:

"The plaintiff, A. A. Fisk, has brought suit against the defendant, the Equitable Aid Union, to recover the amount of an insurance certificate that was issued upon the application of Hattie R. Fisk in the fall of 1881.

"It appears by the evidence of the plaintiff, which is not disputed, that Hattie R. Fisk was a member of an association called the Mutual Aid Union, now called that, but at that time, perhaps, called by some other name.   This was in the fall of 1881.   In pursuance of her rights as such member she made an application for an insurance upon her life, and designated in that application A. A. Fisk, the plaintiff, as the beneficiary or the person to whom the insurance should be paid upon the happening of her death.

"It is also in evidence that she or A. A. Fisk paid the dues required by the company upon that policy, so that the company has received from the plaintiff, or upon this policy, all that it could ask.

"Moreover, it has appeared in evidence that Hattie R. Fisk

right to make such change cannot be taken away by subsequent by-laws. DeGrote v. DeGrote, 175 Pa. 50, 34 Atl. 312.

As to change of beneficiary, see the following editorial notes presenting the authorities on their respective subjects: Changing designation in benefit certificate otherwise than in prescribed method, note to Grand Lodge, A. O. U. W. v. Noll, 15 L. R. A. 350; power of insured to destroy rights of beneficiary, note to Union Cent. L. Ins. Co. v. Buxer, 49 L. R. A. 737.

died on the 3d day of October, I think, of 1885, and that due proof of her death was made.

"This established a prima facie case in favor of the plaintiff. In other words, the plaintiff would be entitled to your verdict for the amount of that policy, $1,175, with interest from ninety days after the death of Hattie R. Fisk, unless the defendant has succeeded in showing a valid defense to the plaintiff's demand.

"The defendant sets up, as a defense to this claim, that, according to the policy as originally issued, and according to the by-laws of the company, which were a part of the original contract, it was left in the power of Hattie R. Fisk to change the beneficiary in this insurance policy or certificate; that in pursuance of such discretion Hattie R. Fisk made an application, in accordance with the rules and by-laws of the company, asking that the original certificate be canceled, and surrendering it in point of fact to the company, and asking that a new certificate be issued in favor of other beneficiaries than the plaintiff.

"The evidence that has been adduced in behalf of the plaintiff, to the effect that he paid the dues upon the original policy, or all of the dues upon either policy during the lifetime of Hattie R. Fisk, is relevant, as showing a compliance upon her part with her part of the contract; but it does not create any right in the plaintiff which he would not have under the policy itself. The policy is the creation and the limit of the plaintiff's right in this case, and if his right under that policy has been disannulled, then he would not have any right or claim against the defendant because of his having paid these dues.

"So far as the plaintiff's case is concerned, there is no dispute as to the facts.

"So far as the defendant's case is concerned, it is incumbent upon you to find by your verdict whether or not the facts set up by the defendant be true. [Is it true that Hattie R. Fisk, in the fall of 1885, made application to the secretary of the subordinate lodge or society of the Equitable Aid Union for a change in her policy? Did she execute an application in writing, asking that such change be made? Did she cause such application, together with the old policy, to be forwarded to the company? Was that received at the home office or by the supreme accountant and secretary of the Equitable Aid Union? Did that secretary cancel the old policy and issue a new certificate, executing it by the seal of the company, signing it himself and having it

signed by the president?    If so, that was an end of the plaintiff's right under the old policy, and the defendant would be entitled to your verdict.]1

"This conclusion is arrived at in view of the terms of the policy and of the by-laws of the company.    The part of the policy relating to this point in this case is as follows:    'This is to certify that Hattie R. Fisk, whose application is hereto attached, is a beneficiary member, and that in the event of death while in good standing in this organization, prior to the completed period of expectancy, the sum of $1,175 shall be paid (as directed) to Albert A. Fisk, my husband, subject to change at pleasure on presentation of this certificate, together with new application to the supreme secretary.'

"From the terms or wording of the policy itself, then, it would seem to rest in the power and discretion of the member or applicant to change the designation of the beneficiary, upon the presentation of the original certificate, together with the new application to the supreme secretary.

"The by-laws with regard to that, under the head of 'Laws,' Law 1, beneficiary fund, § 7, are as follows:    'A member desiring to reduce insurance or change policy in any way may make application to the secretary, paying 50 cents for new benefit certificate and surrendering the old one to be forwarded, with the fee and the application, to the supreme accountant; the old benefit certificate in all cases, with all the conditions thereto, remaining in force until the new one bears date, after which assessments coincide with the new certificate.'

"According to that by-law, then, it would appear that the old certificate would remain in force until the new one would bear date.    What is the meaning of the expression 'bears date?' That is disclosed, as we think, by another part of the by-laws of the company, which is as follows, and is found in section 1, under the same head:

" 'Every member, upon presenting application for benefit certificate, shall pay to the accountant two assessments for the benefit fund'—for the 'B. F.' it is—'50 cents for B. C., 25 cents for supreme med. ex., one of the said assessments to be held in treasury of subordinate union subject to call, the other assessment, with benefit certificate money and supreme medical examiner's fees, to be forwarded with medical certificate and application for benefit certificate to supreme union at once; insurance

·commencing and policy dating on receipt thereof by the supreme union, subject to the approval of the supreme medical examiner.'

"From that, then, it seems that the expression 'bears date' ·does not refer to the actual date which is put in the policy, but is intended to designate a certain period or a certain state in the transaction between the parties, and that the dating then would be from the time when the discretion of the company had been ·exercised and it was passed into the hands of the secretary for carrying out in a formal way.

"[Therefore, if you find that the member or applicant, that is to say, Hattie R. Fisk, had carried out her part that was to be performed in order to have a change made in the designation of :a beneficiary,—to wit, had made the application therefor, had sent with that the original policy, together with the amount of money required for the accomplishing of that end and the paying of its expenses,—she had done all that was required of her; and if this old policy had passed into the hands of the secretary and :a new certificate had been issued by the secretary, signed by himself and by the president, and executed with the seal of the supreme lodge of the Supreme Equitable Aid Union, that would be a cancelation of the original policy and an end of the plaintiff's right thereunder.]" 2

The plaintiff submitted the following points:

"1. The court is respectfully asked to charge the jury that the renewed or second benefit certificate was not executed in accordance with the by-laws, constitution, etc., of the defendant ·company, and that therefore the first benefit certificate is in full force, and their verdict should be for the plaintiff for the sum of $1,175, with interest from the 12th of January, 1886."

"*Ans.* Refused as explained already in the general charge." (Third assignment of error.)

"2. That if the jury believe from the evidence that Albert Fisk, the plaintiff, insured the life of his wife in defendant company, paid for the same, including all dues and assessments, etc., thereunder, and that the benefit certificate was delivered to him by the direction of his wife, and that he has never legally parted with his rights under the said benefit certificate, then the original benefit certificate is in full force, and their verdict must be for the plaintiff."

"*Ans.* This request is refused. The evidence bearing upon

the question as to whether Albert A. Fisk had paid the dues and
assessments was relevant, as you have been instructed to show a
compliance upon the part of Hattie R. Fisk with her part of the
contract; but such payment would not vest any other title in A.
A. Fisk or give to him any other claim against the defendant
company than is shown by the policy and the application."
(Fourth assignment of error.)

"3. That if the jury believe from the evidence that the change
of benefit certificate was made without the knowledge or consent
of the plaintiff, then the cancelation of the old and issuing of the
new benefit certificate was a fraud upon the plaintiff, and de-
fendant company is still liable upon the original contract with
the plaintiff."

"*Ans.* Gentlemen of the jury, you will have perceived, from
what has been said to you already, that the view we take of this
matter is that it rested only in the pleasure or the will of Hattie
R. Fisk to change the beneficiary in the policy or in the insur-
ance.    Therefore, if she exercised such will it could not be fraud
upon the plaintiff, and, therefore, this point is refused."   (Fifth
assignment of error.)

"4. That under the law and the evidence in this case the
plaintiff is entitled to recover the amount of the original benefit
certificate with interest."

"*Ans.* Refused. It is left with you, gentlemen of the jury, to
say whether or not Hattie R. Fisk made such application for a
change in the beneficiary in the policy of insurance and complied
with the terms of the original policy and of the by-laws of the
company.    If she did, then your verdict should be for the de-
fendant.    But if you are not so satisfied, then you should find in
favor of the plaintiff for $1,175 with interest from ninety days
after the death of Hattie R. Fisk."   (Sixth assignment of er-
ror.)

The jury rendered a verdict for defendant, upon which judg-
ment was entered, and plaintiff took this writ.   The assignments
of error specified: (1, 2) The portions of the charge inclosed in
brackets and indicated respectively by exponents; and (3-6) the
answers to the points.

*E. P. Gillespie,* for plaintiff in error.——Cited Pingrey v. Na-
tional L. Ins. Co. 144 Mass. 374, 11 N. E. 562.

*E. S. Templeton* for Mary Fisk and A. H. McElrath, guardian, interpleaders.

OPINION BY MR. JUSTICE STERRETT:

The benefit certificate issued by defendant to Mrs. Hattie R. Fisk was made payable "in the event of her death," etc., to her husband, the plaintiff, subject to change at her pleasure, "on presentation of this certificate together with new application to the supreme secretary."

Notwithstanding the fact that the certificate was delivered to plaintiff and the assessments thereon were paid by him, his wife had the right, on presenting it to the supreme secretary, to apply for and effect a change in designation of the beneficiary named therein. Having obtained possesssion of the certificate—in what manner does not appear—she surrendered it and obtained a new one, payable as follows: To her husband, Albert A. Fisk, $375; to her mother, Mary Fisk, $300; to her son, Freddie F. Fisk, $300, and to her sons, Jimmie and Truman Fisk, each $100, subject to change as provided in original certificates.

When plaintiff accepted the original certificate and paid the assessments thereon he knew or ought to have known that he held it subject to the right of his wife to change the designation of those to whom the insurance money should be paid upon her death. There is no evidence that she ever waived that right, or in any manner estopped herself from exercising it. The second certificate became a substitute for the first; and hence the money is payable as therein designated, unless the surrender of the original and issue of the new certificate were irregular and invalid.

The learned judge's construction of defendant's by-laws, and his instructions relating to the regularity of the transaction, were substantially correct; and, in view of the facts which the jury must have found in reaching the conclusion they did, the validity of the second certificate cannot now be questioned. Indeed, the association defendant appears to have always recognized its validity as a substitute for the original; and, since the rendition of the verdict in this case, it has paid into court, $1,175, the full amount of the insurance, thus leaving the court to determine whether it shall be paid out as designated in the original, or as specified in the second certificate. The affirmance of this judgment virtually determines that, as one of the beneficiaries designated in the second certificate, plaintiff is entitled to

$375, and no more, and that the other beneficiaries are entitled to the sums payable to each of them respectively according to the terms of same certificate.

It is unnecessary to notice either of the assignments of error specially. There is nothing in any of them that requires a reversal of the judgment.

Judgment affirmed.